UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re | : |
| | : |
| STEPHEN A. CACIOLI, | : |
| | : |
|     Debtor | : |
| | : |
| _____ | : |
| | : |
| D.A.N. JOINT VENTURE, A | : |
| LIMITED PARTNERSHIP; CADLEROCK | : |
| JOINT VENTURE, L.P.; and THE | : |
| CADLE COMPANY, | : |
| | : |
|     Plaintiffs/Appellants, | : |
| | : |
| v. | :  No. 3:03CV220(DJS) |
| | : |
| STEPHEN A. CACIOLI, | : |
| | : |
|     Defendant/Appellee. | : |

**MEMORANDUM OF DECISION AND ORDER**

Appellants, D.A.N. Joint Venture, A Limited Partnership; CadleRock Joint Venture, L.P.; and the Cadle Company filed this appeal of a final decision of the United States Bankruptcy Court for the District of Connecticut (Dabrowski, J.) rendering judgment in favor of defendant Stephen A. Cacioli on all appellants' claims. (See Memorandum of Decision on Objection to Discharge, D.A.N. Joint Venture, et al. v. Cacioli (In re Cacioli), No. 98-3239 (Bankr. D. Conn. Dec. 6, 2002). For the reasons that follow, the decision of the bankruptcy court is **AFFIRMED**.

## I.  BACKGROUND

On April 22, 1998, Cacioli filed a petition for relief under Chapter 7 of the Bankruptcy Code.  Cacioli had been employed by the U.S. Postal Service from 1965 through 1985, when he ceased employment in order to pursue interests in the real estate market.  In addition to working as a licensed[1] real estate broker after leaving the USPS, Cacioli started a corporation called A&S Property Management, Inc. ("A&S"), through which he managed condominium associations and purchased real estate.  During this time Cacioli was a partner in at least five partnerships created for the purpose of purchasing and maintaining rental properties.  A man named James Rosenberry was a partner in three of these partnerships.

When conditions in the real estate market deteriorated in the late 1980s and early 1990s, Cacioli's holdings were adversely affected.  On December 31, 1990, Cacioli withdrew from the real estate partnerships with Rosenberry and received four properties, one of which he transferred back to the partnership and the other three of which were eventually foreclosed upon by creditors.  A&S also ceased its real estate brokerage activities in 1995.  All told, each property owned by Cacioli independent of the five partnerships previously mentioned was foreclosed upon by the time he filed his petition.  The partnerships with Rosenberry from

---

[1] Cacioli obtained his license in 1970.

-2-

which Cacioli withdrew were also devastated by the market downturn, and Cacioli was still liable on many of the Rosenberry partnership debts.  Principally because of these Rosenberry partnership debts, Cacioli listed $7,313,300 in unsecured debt in the schedules filed with the bankruptcy court.

This appeal concerns an adversary proceeding to preclude Cacioli from obtaining a discharge of his debts by way of Chapter 7 of the Bankruptcy Code on the grounds that the documentation supporting Cacioli's debts and business activities was of such a poor quality that his creditors' efforts to verify claims and obtain satisfaction were seriously hindered.  See In re Hecht, 237 B.R. 7, 9 (Bankr. D. Conn. 1999) ("The policy served by the obligation to keep adequate records is to give unsecured and undersecured creditors the ability to trace a debtor's financial history to determine whether they are being treated fairly by a debtor who seeks a discharge from liability on debts.").  The bankruptcy court found that discharge was appropriate despite Cacioli's failure to keep adequate records.  See In re Cacioli, 285 B.R. 778, 783 (Bankr. D. Conn. Dec. 6, 2002).  Appellant contends that the bankruptcy court's decision was erroneous.

## II. STANDARD OF REVIEW

Generally, the district court reviews the bankruptcy court's conclusions of law de novo and its findings of fact under a "clearly erroneous" standard.  In re Duplan Corp., 212 F.3d 144

(2d Cir. 2000); In re Manville Forest Prods. Corp., 896 F.2d 1384, 1388 (2d Cir. 1990).  "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

### III. DISCUSSION

Appellants contend that the bankruptcy court erred in deciding to grant Cacioli a discharge of his debt under Chapter 7.  The bankruptcy court's decision to grant a discharge is governed by 11 U.S.C. § 727(a), which provides, in pertinent part, the following:

> The court shall grant the debtor a discharge, unless–
>
> * * *
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> * * *
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

11 U.S.C. § 727(a)(3) & (5).

-4-

A bankruptcy court's decision to allow a discharge when an objection thereto has been lodged under 11 U.S.C. § 727(a) is a mixed question of law and fact.  The court will review the bankruptcy court's application of the legal standard 11 U.S.C. § 727(a) to the facts de novo.  See, e.g., Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3rd Cir. 1992) ("The bankruptcy court's determination that all the factual circumstances of the case amounted to justification for inadequate record keeping by the Altens is an ultimate fact.  Our review of a bankruptcy court's application of section 727(a)(3) to basic and inferred facts necessitates plenary review of the legal standards applied by the court in its analysis.  Thus, we undertake plenary review of the concept of 'justification' actually applied by the bankruptcy court in this case, and also of the bankruptcy court's allocation of the burden of persuasion on this issue.").  If the bankruptcy court applies the correct legal principles, however, the court will afford the bankruptcy court discretion in drawing its ultimate conclusion:

> [a] bankruptcy court may properly exercise discretion when determining, on findings of particular basic and inferred facts, whether a debtor has successfully demonstrated that its failure to keep adequate records was ultimately 'justified.' Assuming a bankruptcy court correctly applied proper legal precepts when making its 727(a)(3) determination, and that the court's basic and inferred factual findings were not clearly erroneous, the bankruptcy court's ultimate determination should be affirmed absent an abuse of discretion.

Id. at 1230 n.2; cf. Zervos, 252 F.3d at 169 (holding that the

bankruptcy court abuses or exceeds its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision--though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be located within the range of permissible decisions.").

"It has long been law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs." In re Chalasani, 92 F.3d 1300, 1309 (2d Cir. 1996). "A discharge of dischargeable debts is not a right but rather a privilege accorded an honest debtor who, among other things, satisfies bankruptcy statutory obligations. Discharge is denied under § 727 if one of its subsections is proven by a preponderance of the evidence." In re Hecht, 237 B.R. 7, 9 (Bankr. D. Conn. 1999). "Clearly, § 727 imposes an extreme penalty for wrongdoing. As such, we have held that it must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" In re Chalasani, 92 F.3d at 1310 (quoting In re Adlman, 541 F.2d 999, 1003 (2d Cir. 1976)).

The bankruptcy court's conclusion that Cacioli did not keep adequate records is not challenged. Appellants challenge the bankruptcy court's conclusion that Cacioli's failure to keep adequate records was justified. Cacioli bears the burden of

proving that his failure to keep adequate records was justified. See Alten, 958 F.2d 1234; In re Blonder, 258 B.R. 534, 538 (Bankr. D. Conn. 2001). "The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." Alten, 958 F.2d at 1231 (quoting In re Wilson, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)). Reliance upon a business partner to maintain records of the partnership's business activities should also be considered. See In re Cox, 904 F.2d 1399, 1403 (9th Cir. 1990).

The bankruptcy court relied upon the following list of relevant considerations in determining whether Cacioli's failure was justified:

> 1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;
>
> 2. The amount of the debtor's obligations;
>
> 3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;
>
> 4. The debtor's education, business experience and sophistication;
>
> 5. The customary business practices for record keeping in the debtor's type of business;

>   6. The degree of accuracy disclosed by the debtor's existing books and records;
>
>   7. The extent of any egregious conduct on the debtor's part; and
>
>   8. The debtor's courtroom demeanor.

In re Blonder, 258 B.R. at 538-39 (quoting In re Sethi, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)).

Appellants take issue with the bankruptcy court's application of the preceding legal standards.  Appellants argue that the bankruptcy court did not properly account for Cacioli's failure to maintain, inspect, or even inquire about the status of the Rosenberry partnership records, which are non-existent. Appellants further argue that Cacioli was not justified in completely relying upon Rosenberry to maintain partnership records, and that Cacioli's reliance was akin to deliberate indifference.  Appellants further contend that the bankruptcy court improperly discounted the importance of certain considerations favorable to appellants such as the complexity of Cacioli's business affairs and acumen, the significant amount of the debt claimed, Cacioli's responsibility for failing to maintain records from the Rosenberry partnerships, Cacioli's apparent deviation from accepted recordkeeping practices, and the state of disarray of Cacioli's documentation in support of his personal debts.

The bankruptcy court's decision is affirmed.  The bankruptcy

court applied the correct legal standards, and its ultimate decision was a permissible exercise of its discretion.  The bankruptcy court correctly placed emphasis upon the Rosenberry partnerships, which are the source of over $7,000,000 of Cacioli's unsecured debt.  The record regarding Cacioli's role in the Rosenberry partnerships consisted entirely of Cacioli's uncontradicted testimony.  Cacioli repeatedly testified that he never had any role in these partnerships beyond identifying properties for purchase and that Rosenberry was the partner responsible for managing the properties and servicing the debt.  There is no evidence that Cacioli spent any time working on the day-to-day operations of the Rosenberry properties, or that he made any kind of regular investment or contribution to the partnership finances.  Cacioli stated that, whenever legal papers were served upon him relating to the Rosenberry properties, he forwarded these papers to Rosenberry's attorney, who also represented Cacioli's interests in the legal proceedings.  Therefore, the bankruptcy judge's reliance upon Cacioli's statement that he trusted Rosenberry and believed that Rosenberry would save the partnerships from financial ruin was a permissible exercise of the bankruptcy court's discretion.

    The bankruptcy court also justifiably based its decision upon Cacioli's lack of expertise and his credibility.  This court acknowledges the fact that the bankruptcy court is in the best

position to judge Cacioli's credibility and sophistication, and, in this case, its findings in this regard have ample support in the record.  Cacioli's current business, A&S, has four employees and annual revenues of about $215,000, which are derived from contracts with twenty-five condominium associations.  Its payroll and other expenses consume the entire amount of revenue, and Cacioli is not paid a salary.  The business is simple and does not require extensive records; the employees manage condominium associations under the terms of existing contracts between A&S and the associations and are paid a salary for doing this.  What records are required are adequately maintained.  In the past, Cacioli had worked as a real estate broker, which requires knowledge about real estate transactions.  Cacioli also owned at least one rental property and acted as a receiver of rents through A&S.  There is nothing in the record, however, indicating that Cacioli possessed the level of sophistication necessary to manage the amount of paperwork necessary to manage the thirty-five to forty investment properties maintained by Rosenberry and the magnitude of debt incurred in acquiring these properties.  As such, the bankruptcy court's weighing of the relevant considerations was a permissible exercise of its discretion.

Likewise, the bankruptcy court's decision to reject appellant's claim that discharge should be denied under § 727(a)(5) is affirmed.  Upon this court's review of Cacioli's

trial testimony, the bankruptcy judge properly found that Cacioli had adequately explained the disposition of his assets.

## IV. CONCLUSION

For the reasons set forth herein, the decision of the bankruptcy court awarding judgment in favor of Cacioli is **AFFIRMED**.  The Clerk of the Court shall close this file.

So ordered this 8th day of November, 2005.

**/s/DJS**
_____
**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**