UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: STEPHEN A. CACIOLI
      Debtor

---

D.A.N. JOINT VENTURE, A LIMITED PARTNERSHIP;
CADLEROCK JOINT VENTURE, L.P.; and
THE CADLE COMPANY
      Plaintiffs/Appellants

V.

STEPHEN A. CACIOLI
      Defendant/Appellee

No. 3:03cv220 (DJS)

JANUARY 6, 2006

## PLAINTIFFS'/APPELLANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY, *NUNC PRO TUNC*, PURSUANT TO BANKRUPTCY RULE 8017

**I.**    Background.

On December 9, 2002, in adversary proceeding 98-3239, the United States Bankruptcy Court for the District of Connecticut entered a Memorandum of Decision (# 37) and an Order (# 38) overruling the Plaintiffs'/Appellants' (hereafter, "the Plaintiffs") objections, brought pursuant to 11 U.S.C. Section 727, to the bankruptcy discharge of Stephen A. Cacioli (hereafter, "the Debtor"). On January 6, 2003, the Plaintiffs filed a Notice of Appeal (# 41) with the Bankruptcy Court, and proceeded to prosecute an appeal of the Bankruptcy Court's decision in this Court.

On December 9, 2003, the Bankruptcy Court, ruling on the Plaintiffs' motion, entered a Memorandum and Order on Request for Relief Pending Appeal (# 53) which ordered that "the entry of a discharge order in this bankruptcy case is STAYED unless and until the pending

appeal of the Judgment in Adversary Proceeding No. 98-3239 is fully and finally resolved in favor of the Debtor."[1]

On November 8, 2005, this Court entered a <u>Memorandum of Decision and Order</u> (# 14) and, on November 9, 2005, entered a <u>Judgment</u> (# 15) affirming the Bankruptcy Court's decision overruling the Plaintiffs' objection to the Debtor's discharge. On December 7, 2005, the Plaintiffs filed a <u>Notice of Appeal</u> (# 41) with respect to this Court's <u>Judgment</u>, and the Plaintiffs are presently prosecuting such appeal to the United States Court of Appeals for the Second Circuit.

On December 30, 2005, the Bankruptcy Court entered an Order (# 61) discharging the Debtor. The Plaintiffs have brought on the present Motion seeking a stay, *nunc pro tunc*, of that discharge order.

II.     Argument.

A.     The Second Branch of the "Law of the Case Doctrine", in Light of the Stated Rationale for the Bankruptcy Court's Stay, Militates in Favor of a Stay Pending Second Circuit Review.

In *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002), the court described the "law of the case" doctrine as follows:

> [t]he law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. This is the so-called "mandate rule." The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case," unless "cogent" and "compelling" reasons militate otherwise.

---

[1] The Bankruptcy Court's <u>Memorandum and Order on Request for Relief Pending Appeal</u> was reported as *In re Stephen A. Cacioli*, 302 B.R. 429 (Bankr. D. Conn. 2003). Because the decision is cited extensively herein, a copy is appended hereto as <u>Exhibit A</u> for this Court's convenience.

2

<u>Citations, quotations omitted.</u> The Second Circuit has described the law of the case doctrine as follows:

> [u]nder the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation. The doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This doctrine is a discretionary rule of practice and generally does not limit a court's power to reconsider an issue....While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties.

*In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991)(<u>citations, quotations omitted</u>).[2]

In *In re Stephen A. Cacioli*, 302 B.R. 429 (Bankr. D. Conn. 2003), the Bankruptcy Court considered in detail the issue of the appropriateness, *in the present case*, of a stay pending appellate review, and decided that a stay should be imposed. The Bankruptcy Court utilized a multi-factored analysis distilled by the United States Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 776, 95 L.Ed.2d 724, 107 S. Ct. 2113 (1987): (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Cacioli*, 302 B.R. at 431.

The Bankruptcy Court's analysis of each of the *Hilton* factors, with reference to the present case, was as follows.

---

[2] In *PCH Assoc.*, the bankruptcy judge determined that the relationship between the debtor and "Liona" was in the nature of a joint venture. *PCH Assoc.*, 949 F.2d at 592. That determination was affirmed by the district court, was not reviewed on a first appeal to the Second Circuit, and so became the law of the case. *Id.* at 592-593. "[I]t was well within the discretion of the bankruptcy court and the district court to have concluded that the prior determination, that the relationship between PCH and Liona was that of a joint venture, constituted the law of the case and should not have been disturbed." *Id.* at 593. Thus, the determination of an issue by a bankruptcy court may constitute "law of the case" through subsequent levels of review.

(1) <u>Likelihood of appellate success.</u> After recognizing "the inherent conflict of a rendering court determining the probability that its own judgment will or will not be reversed on appeal", the Bankruptcy Court concluded (based upon (i) the fact-dependent and fact-intensive character of its substantive ruling (ii) the resulting deference to be accorded thereto on appeal, and (iii) its own confidence in its ruling) that the Plaintiffs had not made a strong showing that they were likely to succeed on the merits of the appeal. *Id.* at at 431. Accordingly, this first factor weighed against the entry of a stay. *Id.* at 432.

(2) <u>Irreparable injury absent a stay.</u> The Bankruptcy Court noted that the Plaintiffs could be injured if a discharge order enabled the Debtor to obtain fresh credit which would not otherwise have been available to him in the absence of a discharge. *Id.* at 431. The Bankruptcy Court stated that such new debt would prejudice the Plaintiffs if the judgment is reversed, since the Plaintiffs "would then be competing in [their] collection efforts with a larger universe of creditors than if a discharge order had not entered." *Id.* at 431-432. Accordingly, this second factor favored the entry of a stay. *Id.* at 432.

(3) <u>Injury to the Debtor.</u> The Bankruptcy Court determined that "[t]he issuance of the stay would not inflict substantial, if any, injury upon the Debtor". *Id.* at 432. The Bankruptcy Court reasoned that "[a] discharge order is of practical significance to a debtor in two primary ways: (i) as a permanent injunction against collection of certain pre-petition debt, and therefore (ii) as a certification of a "clean" credit slate for purposes of future borrowing." *Id.* at 432. As to (i), the Bankruptcy Court found that "the timing of the entry of a discharge order is immaterial because until the appeal is resolved, and the underlying bankruptcy case is closed, the Debtor is protected from the collection efforts of creditors by what is, in essence, a *preliminary*

discharge injunction, namely the automatic stay of Code Section 362(a)." *Id.* at 432.[3] As to (ii), the Bankruptcy Court found that a discharge order's "utility as a credit inducer...is illicit...within the pendency of an appeal of a judgment overruling a discharge objection." *Id.* at 432. Accordingly, the Bankruptcy Court determined that this third factor "provides no argument against a stay." *Id.* at 432.

> (4) <u>Public Interest.</u> With regard to this factor, the Bankruptcy Court stated:
>
> In the present case consideration of the public's interest entails an analysis of the impact of a stay on those entities who might extend post-discharge credit to the Debtor on the strength of a discharge order (hereafter, "Future Creditors"). The entry of a discharge order can prejudice these Future Creditors if the Judgment is reversed, since they would then be forced to compete for collection with a universe of creditors which a discharge order had led them to believe no longer existed. In any given case the prejudice to Future Creditors is speculative, but potentially significant.

*Id.* at 432. The Bankruptcy Court characterized this fourth factor as the "most salient....The rights of these entities is of particular concern to the Court since they, by definition, are not formally represented in proceedings and matters of this nature. The potential injury to Future

---

[3]  Eleven U.S.C. § 362(a) provides, in pertinent part, that "a [bankruptcy] petition filed...operates as a stay, applicable to all entities, of--(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case..., or to recover a claim against the debtor that arose before the commencement of the case...; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case...; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case...; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...; (7) the setoff of any debt owing to the debtor that arose before the commencement of the case...against any claim against the debtor; and (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief...."

Creditors could be enormous and incapable of remedy." *Id.* at 432. Accordingly, the fourth factor weighed heavily in favor of a stay. *Id.* at 432.

A synthesis of the four factors resulted in an order staying the entry of a discharge order "unless and until the pending appeal of the Judgment in Adversary Proceeding No. 98-3239 is fully and finally resolved in favor of the Debtor." *Id.* at 432.

Any contention that the stay issued by the Bankruptcy Court ended with the entry of this Court's <u>Memorandum of Decision and Order</u> (# 14) and <u>Judgment</u> (# 15) is at least plausible and, perhaps, dead-on accurate, from a procedural perspective. Given the present appeal to the Second Circuit, however, it cannot be argued that the appeal of the Bankruptcy Court's judgment has been "fully and finally resolved", in substance.

Nothing has changed during the pendency of the appeal before this Court which would affect in any manner the validity of the Bankruptcy Court's analysis, as discussed above. The issues considered by the Bankruptcy Court in deciding whether to enter a stay pursuant to Bankruptcy Rule 8005[4] are exactly the same as the issues which must be considered by this Court in deciding whether to enter a stay pursuant to Bankruptcy Rule 8017[5]. The Bankruptcy

---

[4] Bankruptcy Rule 8005 ("Stay Pending Appeal") provides, in pertinent part: "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judge...must ordinarily be presented to the bankruptcy judge in the first instance....the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or may make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

[5] Bankruptcy Rule 8017(b)("Stay Pending Appeal to the Court of Appeals") provides, in pertinent part: "[o]n motion and notice to the parties to an appeal, the district court...may stay its judgment pending an appeal to the court of appeals. The stay shall not extend beyond 30 days after the entry of the judgment of the district court...unless the period is extended for cause shown. If before the expiration of a stay entered pursuant to this subdivision there is an appeal to the court of appeals by the party who obtained the stay, the stay shall continue until final disposition by the court of appeals."

6

Court's analysis does not require reconsideration in connection with the present Motion. Accordingly, pursuant to the second branch of the law of the case doctrine, this Court should stay its Judgment, *nunc pro tunc*, pending the outcome of the Second Circuit appeal.

    B.    <u>The Stated Rationale for the Bankruptcy Court's Stay, Militates in Favor of a Stay Pending Second Circuit Review.</u>

In the event the law of the case doctrine is not applicable in this situation, then the analysis contained in the Bankruptcy Court's reported decision, *In re Stephen A. Cacioli*, 302 B.R. 429 (Bankr. D. Conn. 2003), as discussed *supra*, nonetheless provides persuasive authority, in the case at bar, as to why a stay should enter in accordance with Bankruptcy Rule 8017, in order to preserve the *status quo* pending the outcome of the Second Circuit appeal.

Dated at New Hartford, Connecticut this 6th day of January, 2006.

                        PLAINTIFFS/APPELLANTS

By _/s/ Edward P. Jurkiewicz_
Edward P. Jurkiewicz   ct04779
Edward P. Jurkiewicz, LLC
P.O. Box 222
New Hartford, CT  06057
Telephone: (860) 379-6552
Fax: (860) 379-6558
edwardjurkiewicz@sbcglobal.net
Their Attorney

7

Service: **Get by LEXSEE®**
Citation: **302 br 429**

*302 B.R. 429, \*; 2003 Bankr. LEXIS 1663, \*\**

IN RE: STEPHEN A. CACIOLI, DEBTOR.

CHAPTER 7, CASE NO. 98-31593 (ASD)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT

302 B.R. 429; 2003 Bankr. LEXIS 1663

December 9, 2003, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a Chapter 7 bankruptcy case, creditor moved for a stay order pursuant to Fed. R. Bankr. P. 8005. Creditor sought to prevent the issuance of a discharge order in favor of debtor pending full appellate resolution of an adversary proceeding commenced by creditor against debtor under Bankruptcy Code 727(a).

**OVERVIEW:** In the related adversary proceeding, the court entered judgment rejecting creditor's claim seeking a denial of a general discharge of debtor. Creditor appealed that decision and successfully sought a stay in the current proceedings pursuant to Fed. R. Bankr. P. 8005 pending resolution of the appeal. The first Hilton factor for determining whether a stay of proceedings should enter weighed against a stay. The court's ruling in the adversary proceeding was extremely fact-intensive, so it would be accorded great deference on review. The second factor favored the entry of a stay; injury could occur to creditor if a discharge order enabled debtor to obtain credit that would not have been available to him absent a discharge. Entering a stay would cause little if any harm to debtor's legitimate interests. The most salient factor in the calculus was the public interest, specifically, the interests of future creditors--the yet unknown universe of potential creditors of debtor who might rely, to their detriment, on the premature entry of a discharge order. The potential injury to future creditors could be enormous and incapable of remedy, although the injury also was rather speculative.

**OUTCOME:** The court granted the motion, and thus entered a stay precluding entry of a discharge order in the instant bankruptcy case pending resolution of creditor's appeal.

**CORE TERMS:** pending appeal, adversary proceeding, post-discharge, collection, issuance, public interest, universe, substantial possibility, irreparable injury, bankruptcy case, superfluous, declaratory, initiated, movant, succeed, entities

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas

**HN1** The propriety of a stay pending appeal is informed by a multi-factored analysis distilled by the United States Supreme Court. Under that analysis, the following factors must be considered: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest

EXHIBIT A

lies.  More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** [**1] TRUSTEE: MICHAEL J DALY, NEW HAVEN, CT.

For STEPHEN A CACIOLI, Debtor: LAURENCE P NADEL, NEW HAVEN, CT.

**JUDGES:** Albert S. Dabrowski, Chief United States Bankruptcy Judge.

**OPINIONBY:** Albert S. Dabrowski

**OPINION:** [*430] **MEMORANDUM AND ORDER ON REQUEST FOR RELIEF PENDING APPEAL**

The present contested matter was initiated on October 22, 2003, by D.A.N. Joint Venture, a Limited Partnership, Cadlerock Joint Venture, L.P., and the Cadle Co. (hereafter, collectively, "Cadle") through the filing of the above-captioned *Motion for Order Pursuant to Bankruptcy Rule 8005* (hereafter, the "Stay Motion"), Doc. I. D. No. 50. The Stay Motion seeks, *inter alia*, to prevent the issuance of a discharge order in favor of the Debtor pending full appellate resolution of an adversary proceeding commenced by Cadle against the Debtor under Bankruptcy Code Section 727(a).

On December 6, 2002, this Court entered Judgment (hereafter, the "Judgment") in favor of the Debtor-Defendant in Adversary Proceeding No. 98-3239, in which Cadle, as Plaintiff, had sought a denial of the general discharge of the Debtor. On January 6, 2003, Cadle filed a Notice of Appeal with respect to the Judgment. The appeal initiated by that [**2] pleading is presently pending in the United States District Court for the District of Connecticut, Docket No. 3:03CV - 220 (CFD). To date, the Clerk has not entered an order discharging the Debtor of debts pursuant to Section 727(a). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 When a plaintiff in a Section 727(a) action appeals a judgment in favor of a debtor, the Clerk's current practice, in each seat of this Court, is to enter a discharge order in due course unless the appellant seeks and obtains a stay of that entry pending appeal.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The specific relief prayed for in the Stay Motion is an order from this Court "staying the entry of a discharge order . . . pending disposition of the Appeal, and/or modifying any discharge order which has or may hereafter enter to provide that such discharge order is subject to all orders, [*431] including reversal, revocation, or modification entered in subsequent proceedings as a result of the Appeal." Although the *declaratory* aspect of Cadle's prayer appears superfluous, n2 the Court determines that its request for [**3] *mandatory* relief, in the form of an appellate stay pursuant to Bankruptcy Rules 7062 and 8005, is appropriate under the circumstances of this case.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Court knows of no legal principle that would disable an appellate court from vacating a discharge order, and/or according other necessary relief, in the event it determines to reverse the Judgment. Thus the *declaratory* aspect of the requested relief appears superfluous since it simply articulates the inherent power of an appellate court. Nothing is added to that power by

a declaratory order of this Court.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN1** The propriety of a stay pending appeal is informed by a multi-factored analysis distilled by the United States Supreme Court in Hilton v. Braunskill, 481 U.S. 770, 776, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987). See Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998). Under that analysis, the following factors must be considered:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; [**4] (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 The Court is aware that a number of panels in the United States Court of Appeals for the Second Circuit, and subordinate Courts therein, have applied a modified, and *arguably* lower, standard (hereafter "the *Hirschfeld* Standard") in analyzing motions for stay relief pending appeal. *See, e.g., Cooper v. Town of East Hampton,* 83 F.3d 31, 36 (2d Cir. 1996); *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir.1994); *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir. 1992); *In re Country Squire Assoc. of Carle Place, L.P.,* 203 B.R. 182, 183 (2d Cir. BAP 1996) ("(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, *(3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal,* and (4) the public interests that may be affected." (emphasis added)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**5]

1. Likelihood of Appellate Success. The Court recognizes the inherent conflict of a rendering court determining the probability that its own judgment will or will not be reversed on appeal. Nonetheless the development of a ruling in this adversary proceeding was an extremely fact-intensive, and fact-dependent exercise. As a result, the Judgment and its supporting findings of facts will be accorded great deference by an appellate court. For that reason, as well as a strong sense of confidence in its assessment of the record and the law, the Court concludes that Cadle has not made a "strong showing" or "demonstrated a substantial possibility, although less than a likelihood" that it "will succeed on the merits" of its pending appeal.

2. Irreparable Injury Absent a Stay. Cadle's request for stay relief, at least in part, is apparently made to preempt any argument by the Debtor that the entry of a discharge order will moot the pending appeal. Cadle's concern in this regard is not immediately apparent to the Court. However, there is another aspect of potentially irreparable injury at play under the present circumstances. Injury could occur if a discharge order enabled the Debtor [**6] to obtain fresh credit which would not otherwise have been available to him in the absence of a discharge (hereafter, "Post-Discharge Debt"). The presence of Post-Discharge Debt prejudices Cadle if the Judgment is reversed, since it would then [*432] be competing in its collection

Get a Document - by Citation - 302 B.R. 429
Case 3:03-cv-00220-DJS  Document 19  Filed 01/09/2006  Page 11 of 12
Page 4 of 5

efforts with a larger universe of creditors than if a discharge order had not entered. The *degree* of this prejudice is dependent on numerous factors, including, *inter alia*, the amount of the Post-Discharge Debt.

3. Injury to the Debtor. The issuance of the stay would not inflict substantial, if any, injury upon the Debtor. A discharge order is of practical significance to a debtor in two primary ways: (i) as a permanent injunction against collection of certain pre-petition debt, and therefore (ii) as a certification of a "clean" credit slate for purposes of future borrowing. As to the first aspect, the timing of the entry of a discharge order is immaterial because until the appeal is resolved, and the underlying bankruptcy case is closed, the Debtor is protected from the collection efforts of creditors by what is, in essence, a *preliminary* discharge injunction, namely the automatic stay of Code [**7] Section 362(a). See 11 U.S.C. § 362(e). The second benefit of a discharge order - its utility as a credit-inducer - is illicit, for the reasons highlighted in PP 2 and 4 of this Memorandum Order, within the period of the pendency of an appeal of a judgment overruling a discharge objection.

4. Public Interest. In the present case consideration of the public's interest entails an analysis of the impact of a stay on those entities who might extend post-discharge credit to the Debtor on the strength of a discharge order (hereafter, "Future Creditors"). The entry of a discharge order can prejudice these Future Creditors if the Judgment is reversed, since they would then be forced to compete for collection with a universe of creditors which a discharge order had led them to believe no longer existed. In any given case the prejudice to Future Creditors is speculative, but potentially significant.

5. Synthesis. In the present case the first Hilton factor clearly weighs against a stay of the entry of the discharge order. The second factor favors the entry of a stay. The third factor provides no argument against a stay. The most salient factor in the [**8] present calculus, however, is the public interest - specifically, the interests of Future Creditors - the yet unknown universe of potential creditors of the Debtor who may rely, to their detriment, on the premature entry of a discharge order. The rights of these entities is of particular concern to the Court since they, by definition, are not formally represented in proceedings and matters of this nature. The potential injury to Future Creditors could be enormous and incapable of remedy. Therefore, in light of the foregoing,

**IT IS HEREBY ORDERED** that the entry of a discharge order in this bankruptcy case is **STAYED** unless and until the pending appeal of the Judgment in Adversary Proceeding No. 98-3239 is fully and finally resolved in favor of the Debtor.

DATED: December 9, 2003

Albert S. Dabrowski

Chief United States Bankruptcy Judge

12/9/03

Service: **Get by LEXSEE®**
Citation: **302 br 429**
View: Full
Date/Time: Thursday, January 5, 2006 - 3:48 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
\ - Caution: Possible negative treatment

## CERTIFICATION

I hereby certify that a copy of Plaintiff/Appellants' Motion for Stay, Nunc Pro Tunc, Pursuant to Bankruptcy Rule 8017 and Memorandum of Law was sent via first class United States mail, postage prepaid, this 6th day of January, 2006 to:

Barbara H. Katz, Esquire
57 Trumbull Street
New Haven, CT  06510-1004
(Counsel to Defendant/Appellee)

Courtesy copy to:

James Graham, Esquire
Pepe & Hazard
225 Asylum Street
Hartford, CT 06103


Edward P. Jurkiewicz, Esquire